IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

WILLIE H. HICKS,                    )
                                    )
            Plaintiff,              )
                                    )
      v.                            )   CASE NO. 3:11-CV-12-WKW
                                    )            [WO]
ALEXANDER CITY BOARD OF             )
EDUCATION, *et al.*,                )
                                    )
            Defendants.             )

**MEMORANDUM OPINION AND ORDER**

This is an employment discrimination and retaliation action against the
Alexander City Board of Education ("ACBOE" or "Board"), five members of the
ACBOE, and the superintendent of Alexander City Schools.  In this lawsuit, Plaintiff
Willie H. Hicks, an African-American, alleges that ACBOE removed him as the head
coach for the boys' varsity and girls' junior varsity basketball teams based upon his
race and in retaliation for engaging in protected conduct.  He brings his claims
pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*, 42
U.S.C. § 1981, and 42 U.S.C. § 1983.

Before the court is Defendants' motion for summary judgment, which is
accompanied by a brief and an evidentiary submission.  (Docs. # 21–23.)  Mr. Hicks
responded in opposition to summary judgment (Doc. # 26), and Defendants replied

(Doc. # 29).  The motion is ready for resolution.  Based upon careful consideration of the arguments of counsel, the relevant law and the record as a whole, Defendants' motion for summary judgment is due to be granted.

## I.  JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and 42 U.S.C. § 2000e-5(f)(3).  The parties do not contest personal jurisdiction or venue, and the court finds that there are allegations sufficient to support both.

## II.  BACKGROUND

Mr. Hicks has taught in the Alexander City School System for more than twenty-five years.  Most of his educational career has been spent at Benjamin Russell High School ("BRHS") as a physical education teacher.  Mr. Hicks is currently a health teacher.  In addition to being a teacher, Mr. Hicks is one of the most successful head coaches of boys' varsity basketball in the history of BRHS, having compiled a record of 190 wins and 105 losses.  However, Mr. Hicks has faced difficulties during his career at BRHS.  In 2003 and 2004, Mr. Hicks filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging in part that he had been paid less for coaching than similarly-situated white coaches.  Ultimately,

ACBOE raised his coaching supplements to $8,000 a year in order to ensure a non-discriminatory supplemental pay scale, and litigation was avoided.

This action arises out of the termination of Mr. Hicks in his coaching positions. The ACBOE voted not to renew Mr. Hicks's contract as the head coach of the boys' varsity basketball team after the 2008–09 school year. After the 2009–10 school year, the Board voted again not to renew Mr. Hicks's contract, this time as the head coach of the girls' junior varsity basketball team. Mr. Hicks filed EEOC charges with respect to these nonrenewals and filed suit on January 5, 2011, after receiving statutory notice of his right to sue from the EEOC.[1]

Lou Ann Wagoner became superintendent of Alexander City Schools on June 1, 2008. Superintendent Wagoner was responsible for making recommendations for all employment actions, including contract renewals, to the full Board. The full Board would then vote on the recommendations, which if passed, would become the employment actions of ACBOE. At the end of the 2008–09 school year, Superintendent Wagoner recommended to the full board that Mr. Hicks be

---

[1] Defendants argue that Mr. Hicks's claim challenging the nonrenewal of his position as coach of the boys' varsity basketball team is time barred for failure to file a Title VII claim lawsuit within ninety days of receiving a right to sue letter, which it argues occurred in July 2009. Mr. Hicks contends that his second EEOC charge, which was filed in July 2010, provides the basis to find his present claim about his termination as the boys' varsity basketball coach timely. Neither party argues this point with clarity; therefore, the court assumes, without deciding, that Mr. Hicks is not time barred from pursuing his claim challenging his termination as the head coach of the boys' varsity basketball team.

nonrenewed as the head coach of the boys' varsity basketball team.  She alleges that her recommendation was based on concerns voiced by members of the community, students, and teachers at BRHS, as well as on information she had received from board members themselves.

The next year, in May 2010, Superintendent Wagoner recommended the removal of Mr. Hicks as the girls' junior varsity basketball coach based primarily upon the recommendation of Principal Jose Reyes.  Principal Reyes had expressed his concerns about Mr. Hicks, including his use of inappropriate language and improper conduct toward team players.  Principal Reyes also expressed broader concerns about Mr. Hicks's reputation and the number of complaints from parents and other members of the community.  Several complaints also had been brought to the attention of the board members (especially African-American board members) by members of the community.  In some instances, the individual board members claimed they personally witnessed inappropriate conduct.  At least three board members reported complaints that Mr. Hicks had used vulgar and inappropriate language in the presence of students.

Mr. Hicks vigorously contests the facts underlying the attacks on his character as false and not credible, but admits that he may have used inappropriate language in front of students and that members of the community had lodged complaints against him.  Mr. Hicks argues that the lack of factual bases for the character attacks on him

demonstrates that there were members of the school administration who had a personal or discriminatory vendetta against him.

The Board selected two male African-American coaches to replace Mr. Hicks: Michael Goggins replaced Mr. Hicks as the head boys' varsity basketball coach, and Roderick Williams replaced Mr. Hicks as the junior varsity girls' basketball coach. Mr. Hicks acknowledges that the African-American coach who replaced him as head coach of the boys' varsity basketball team had prior coaching experience and that he had played basketball at the collegiate level. (Hicks's Dep. 49.) After one season, Mr. Goggins left his head coaching position with the boys' varsity basketball team, and subsequently, a white head coach, Jeffery Hines, was hired to replace Mr. Goggins.

## III.  STANDARD OF REVIEW

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Under Rule 56, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing there is no genuine issue of material fact, or by showing that the non-moving party has failed to present evidence in support of some element of its case

on which it bears the ultimate burden of proof. *Id.* at 322–24. "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

Once the moving party has met its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Rule 56(e)(2). To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine factual dispute exists if "a reasonable jury could return a verdict for the non-moving party." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (internal quotation marks and citation omitted).

## IV.  DISCUSSION

Mr. Hicks alleges multiple claims against Defendants. First, he brings claims pursuant to § 1981 and § 1983 for employment discrimination and adoption of a custom or policy that deprives him of his equal protection right to be free from state sanctioned racial discrimination. Second, Mr. Hicks asserts violations of Title VII, including claims alleging race discrimination in his termination from both coaching positions, failure to rehire him to his former position as head coach of the boys' varsity

6

basketball team, and retaliation stemming from his 2003, 2004 and 2009 EEOC charges.  Defendants contend that summary judgment is appropriate on all claims.

**A.    Claims for Racial Discrimination in Termination**

*1.    Interplay Between § 1981, § 1983 and Title VII in the Public Employment Context*

Mr. Hicks asserts § 1981 and § 1983 claims against ACBOE, the superintendent, and the individual Board members.[2]  Where a plaintiff seeks vindication of rights secured by § 1981 against a governmental actor, § 1983 provides the exclusive remedy for obtaining relief.  *Butts v. Cnty. of Volusia*, 222 F.3d 891, 893 (11th Cir. 2000) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731–32 (1989)); *see also Rioux v. City of Atlanta*, 520 F.3d 1269, 1273 n.3 (11th Cir. 2008).  The Eleventh Circuit has explained that generally when race discrimination claims arise in the public employment context, "§§ 1981 and 1983 claims require the same elements of proof and involve the same analytical framework as Title VII claims."  *Bush*, 414 Fed. App'x at 266 (citing *Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 843 n.11 (11th

---

[2] An aggrieved public employee may use § 1983 as a vehicle for bringing a civil lawsuit because § 1983 "provides every person with the right to sue those acting under color of state law for violations of federal constitutional and statutory provisions."  *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1299 (11th Cir. 2007).  The Fourteenth Amendment's Equal Protection Clause prohibits intentional race discrimination in public employment.  *See Cross v. State of Ala.*, 49 F.3d 1490, 1507 (11th Cir. 1995).  "Section 1981 also prohibits public employers from terminating contracts on the basis of an employee's race."  *Bush v. Houston Cnty. Comm'n*, 414 Fed. App'x 264, 266 (11th Cir. 2011).

Cir. 2000)); *see also Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) ("[T]he analysis of disparate treatment claims under § 1983 is identical to the analysis under Title VII where the facts on which the claims rely are the same."). Based upon this authority, this opinion explicitly addresses only Title VII unless otherwise noted.

### 2.    *Claims for Racial Discrimination in Termination*

Mr. Hicks alleges two specific instances of racial discrimination:  that he was nonrenewed from his position as coach of the boys' varsity basketball team after the 2008–09 school year and that he was nonrenewed from his position as coach of the girls' junior varsity basketball team after the 2009–10 school year.

A plaintiff has "'the ultimate burden of proving discriminatory treatment'" and can meet that burden by presenting direct or circumstantial evidence of intent. *Crawford*, 529 F.3d at 975–76 (quoting *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)).  The *McDonnell Douglas* burden-shifting framework applies when a plaintiff seeks to prove discriminatory intent by circumstantial evidence, as Mr. Hicks seeks to do in this case.[3]  *Id.*

Under that framework, a plaintiff must first make out a *prima facie* case of discrimination.  For a racially discriminatory discharge claim, a plaintiff may satisfy a *prima facie* case by showing that (1) he was a member of a protected class, (2) he

---

[3] The framework is based on *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

was qualified for the position, (3) he was subjected to an adverse employment action, and (4) "he was replaced by someone outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class." *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003).

Once the plaintiff makes out a *prima facie* case of discrimination, the employer must "'articulate some legitimate, nondiscriminatory reason' for the adverse employment action," which, if established, shifts the burden back to the plaintiff to show the employer's reason was "pretext for discrimination." *Crawford*, 529 F.3d at 976 (quoting *McDonnell Douglas*, 411 U.S. at 802). To show pretext, the plaintiff must "'cast sufficient doubt'" on the employer's reason such that a "'reasonable factfinder'" could conclude that the reason did not "'actually motivate [the employer's] conduct.'" *Id.* (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

Defendants concede that Mr. Hicks is a member of a protected class, that his nonrenewals were adverse employment actions, and that he was qualified for the positions. However, Defendants contend that Mr. Hicks's *prima facie* case fails on the fourth element because Mr. Hicks was replaced in his coaching positions by African-American coaches.

The facts establish that Mr. Hicks was replaced by African-American coaches in both coaching positions at issue, and Mr. Hicks does not contest those coaches' qualifications.  However, Mr. Hicks points to the hiring of Mr. Hines (who is white), who filled the head coaching position for the boys' varsity basketball team after Mr. Hicks's coaching replacement, Mr. Goggins, stepped down.  Mr. Hicks argues that by initially replacing him with an African-American coach, the Board was attempting to open the door for replacing him in the long term with white coaches and that the Board only wanted the appearance of a non-racial motive.  It is true that in certain circumstances, a plaintiff may establish a *prima facie* case of discrimination "despite the fact that the employer hired a minority to fill the vacancy left by the plaintiff." *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1521 (11th Cir. 1995) (listing factors courts have considered in analyzing whether a minority replacement dispels an inference of discrimination).  Here, however, Mr. Hicks relies only on his bare assertion of a discriminatory motive theory, supported by nothing but speculation.  He presents no evidence from which it reasonably can be inferred that the hiring of African-American coaches to replace him was a pretextual plan to cover up Defendants' intent to discriminate against Mr. Hicks based upon his race.  The purpose of the *prima facie* case is to make an initial but refutable demonstration that racial bias motivated an employment decision.  On this record and absent any evidence that a

white coach was accused of engaging in similar misconduct but was retained, the fact that Mr. Hicks was replaced by African-American coaches prevents an inference that racial discrimination was at play in the decisions to non-renew Mr. Hicks's contracts with respect to his coaching jobs.

Nor does Mr. Hicks fare better in the pretext analysis. He puts the vast majority of his brief behind arguing that the accusations against his character were unsupported and thereby demonstrate pretext. To establish pretext, it is not enough that Mr. Hicks believes that he is more qualified than the coaches who were selected. The concerns addressed by a Title VII discrimination action focus on whether the employment decision was motivated by discrimination based on race, and not "whether the employment decision [was] prudent or fair." *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000) (courts are not in business of judging whether an employment decision is prudent or fair). An employee may not "substitute his business judgment for that of the employer." *Chapman v. AI Trans.*, 229 F.3d 1012, 1030 (11th Cir. 2000). On this record, even if it were assumed that Mr. Hicks could establish a *prima facie* case, he fails to present any evidence that the legitimate, nondiscriminatory reasons for terminating his employment – multiple instances of misconduct reported and/or observed by the Board – were pretextual. Because Mr. Hicks fails to establish a *prima facie* case of discrimination on his claims challenging his terminations from

11

his head coaching positions or to raise a genuine issue of material fact on pretext, summary judgment is due to be entered in favor of Defendants on these claims.

Finally, Mr. Hicks mentions that he applied and should have been rehired for the head coach of the boys' varsity basketball team from which he was terminated. (Doc. # 26 at 33.) However, on this record, this claim does not give rise to a separate cause of action from his Title VII discrimination claim. A claim for failure to rehire cannot stand apart from a wrongful termination claim unless there is an independent act of discrimination in the refusal to rehire. *Cf. Poulsen v. Publix Super Markets, Inc.*, 302 Fed. App'x 906, 909 (11th Cir. 2008) ("[A] cause of action for failure to rehire after an alleged discriminatory termination accrues at the same time as does the termination claim absent a new and discrete act of discrimination in the refusal to rehire."). No independent act of discrimination is presented or argued. Additionally, even if it were assumed *arguendo* that Mr. Hicks could satisfy the *prima facie* elements on a failure to rehire claim, he cannot show that his non-selection was pretextual. Mr. Hicks's comparisons of his qualifications to Mr. Hines's "fails to show that the disparities between the successful applicant's and his own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (citation and internal quotation

marks omitted).  Summary judgment is also due to be entered in favor of Defendants on this failure to rehire claim.

## C.   <u>Title VII Retaliation Claims</u>

The burden of proof in Title VII retaliation cases also is governed by the framework established in *McDonnell Douglas*.  *See* 411 U.S. at 802; *see also Wright v. Southland Corp.*, 187 F.3d 1287, 1305 (11th Cir. 1999).  To establish a *prima facie* case of retaliation under Title VII, a plaintiff must prove that (1) he engaged in statutorily protected activity, (2) he suffered a materially adverse action, and (3) there was some causal relation between the two events.  *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).  Defendants argue convincingly that Mr. Hicks cannot establish a *prima facie* case of retaliation.  Mr. Hicks presents two theories of retaliation:  that his termination as the head coach of the boys' varsity basketball team was in retaliation for filing EEOC charges in 2003 and 2004, and that his termination as the head coach of the girls' junior varsity basketball team was in retaliation not only for filing EEOC charges in 2003 and 2004, but also for filing an EEOC charge in July 2009 with respect to his termination as the head coach of the boys' varsity basketball team.

Mr. Hicks cannot establish a causal connection between the filing of his EEOC charges and his termination from the positions at issue.  To establish a causal

connection, a plaintiff must demonstrate that "the decision-maker[s] [were] aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008) (citing *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000)). Further, the plaintiff must show that there is a "very close" temporal proximity between the employer's knowledge of the plaintiff's protected activity and the adverse employment action. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001); *see also Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361 (11th Cir. 2007) (finding no causation between plaintiff's complaints of harassment and her termination three months later); *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (three-month gap by itself was insufficient to casually link allegedly harassing conduct to the protected conduct).

Here, the retaliation claim arising from Mr. Hicks's nonrenewal as the head coach of the boys' varsity basketball team is based upon Mr. Hicks's having filed previous EEOC charges in 2003 and 2004. Mr. Hicks's filing of his EEOC charges in 2003 and 2004 predated his termination by more than five years. Moreover, by Mr. Hicks's own account, ACBOE satisfactorily addressed the concerns underlying these charges by raising his coaching supplemental pay, and litigation was thereby avoided. Any asserted causal link between Mr. Hicks's termination as the head coach of the boys' varsity basketball team and the previous EEOC charges is too attenuated under

14

controlling standards to create a material issue of fact on the issue of retaliatory animus.

Similarly, Mr. Hicks fails to demonstrate the requisite causal link as to his claim of retaliation stemming from his removal as the girls' junior varsity basketball coach. His 2003 and 2004 EEOC charges are too remote, as already discussed. Moreover, Mr. Hicks's July 2009 EEOC charge was filed ten months before he was removed as the girls' junior varsity basketball coach. Under binding precedent, a ten-month gap between the protected conduct and the adverse employment action also is too remote to permit a reasonable fact finder to make a causal inference. Mr. Hicks's arguments for relaxing the temporal nexus requirement are neither supported by authority nor persuasive.[4]  (Doc. # 26, at 21–23.)

Because Mr. Hicks fails to establish a *prima facie* case, there is no need to address the remaining parts of the *McDonnell Douglas* test, whether Defendants have articulated a legitimate, non-retaliatory reason for the adverse employment actions and whether that reason is pretextual. Nonetheless, assuming that Mr. Hicks had satisfied the prima facie elements, Mr. Hicks cannot demonstrate that the board members'

---

[4] Mr. Hicks includes a statement in an outline heading in his brief that he "was illegally transferred and his office taken from him after he filed the 2009 charge of discrimination." (Doc. # 26, at 19-20.) Mr. Hicks offers no elaboration on this cursory one-sentence statement and provides no citations to the record or to legal authority to support his rhetoric. The court declines, therefore, to address this statement.

15

concerns over his character and conduct were a pretext for discrimination.  Even if some of the character concerns or complaints concerning Mr. Hicks's improper behavior turned out to be unfounded, Mr. Hicks submits no evidence that requires the court to "second-guess as a kind of super-personnel department" Defendants' decision. *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000).  The complaints were plural, from multiple sources, and sufficient to constitute legitimate reasons for Mr. Hicks's removal as a high school and junior varsity basketball coach.  And Mr. Hicks himself admits that he engaged in some of the conduct that was the basis of his termination, such as using profanity around students.  Therefore, even assuming Mr. Hicks had succeeded in presenting a *prima facie* case, summary judgment nonetheless is appropriate because Mr. Hicks cannot demonstrate that Defendants' reasons for the employment decisions were pretextual.

## D.   <u>Additional Matters</u>

Additional matters have been raised in the summary judgment motion that are no longer necessary to address.  Because Mr. Hicks's discrimination and retaliation claims fail on their merits, the court need not decide whether the ACBOE members and the superintendent are appropriate Defendants in their individual and official capacities under either Title VII, § 1983, or § 1983.  Similarly, it need not be decided whether qualified immunity would otherwise protect the individual Defendants from liability

under § 1983 in their personal capacities for monetary damages.  *See Goree v. City of Atlanta, Ga.*, 276 Fed. App'x 919, 922 n.2 (11th Cir. 2008).  It also is unnecessary to address Mr. Hicks's custom and policy claims against ACBOE because "an inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred."  *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996). The failure of Mr. Hicks to demonstrate a constitutional violation also is fatal to his custom and policy claims.

## V.  CONCLUSION

Based on the foregoing reasons, it is ORDERED that  Defendants' motion for summary judgment (Doc. # 21) is GRANTED on all of Mr. Hicks's claims.

An appropriate judgment will be entered.

DONE this 23rd day of August, 2012.

_____/s/ W. Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE